So I'm Lawrence Gibbs representing Mr. Moeller, the petitioner in this case. Your Honor, in the ten minutes I have, I'd like to address how California's procedure for conducting in-camera ex parte suppression motions requires reversal of this judgment. The unusual procedure that brings us here today is this procedure established by the California Supreme Court in People v. Hobbs. In the Hobbs procedure, whenever a defendant makes a suppression motion in a criminal case and the court determines that there's some basis for protecting the confidentiality informant, the Superior Court must, there's no discretion, must conduct the suppression motion in camera without the defendant and without the defendant's lawyer. Counsel, the problem you have is we're here on habeas, right? Exactly. And so the decision of the California court has to be contrary to or an unreasonable application of Supreme Court law. Yes. What's the Supreme Court case that you're relying on to challenge the decision of the California courts? There are two prongs to a right to counsel violation. First, you have to establish that there's a critical stage at which right counsel attaches. So I'm asking you what case. What is the case we should look to? The case for determining whether it's a right, there's a right to counsel attaches would be United States v. Chronic. All right. It's set forth in footnote 25 and the accompanying text of Chronic, which states that a critical stage and also relies on other Supreme Court cases, including Memphis v. Ray, which goes back to the 80s, has a host of cases describing what is a critical stage of the proceedings. And they're all in our brief. And those cases say that the test for determining a critical stage of the proceedings is whether or not the substantial rights of the defendant are affected. If we agree with you that this was a critical stage, then we go to the second question as to whether or not there was a complete deprivation of counsel. Correct. And that's what I think is your harder argument. Your Honor, again, the Supreme Court case that we would rely upon, and this is an unusual case because the California Supreme Court decision, we argue, is contrary to. It's not an unreasonable application. It's actually contrary to because they applied the wrong legal standard in deciding  Chronic in footnote 25 says there's two ways that the State can affect a denial of counsel. Complete absence of counsel from the critical stage, that's one way. The other way is to prevent counsel, devise procedures that prevent counsel from assisting at that critical stage. That is the test for deprivation of counsel. What was the wrong legal standard that the California court applied? The California court decided that there would be no deprivation of counsel if the defendant can be represented by the judge. That's the – if you look at the Hobbs decision, what Hobbs says is that we recognize that there's a problem because there's no adversary in the suppression hearing, but we put our faith in the judge. And it designates the judge as the representative for the defendant. Go ahead. It's not true there's no adversary at the suppression hearing, is it? I'm sorry, Your Honor. It is not true that there's no adversary at the suppression hearing. There was an adversary at the suppression hearing. Part of it, of course, the part dealing with the informant and disclosure of the informant, the privilege of the informant, counsel was not present at. But the Supreme Court has pretty clearly said that's okay, hasn't it? Your Honor, the suppression hearing actually was conducted in chambers without the defense lawyer present. Now, the – What you call the suppression hearing, yes. The examination of the affidavit, examination of the warrant, the decision of whether the informant had to be disclosed or whether the information from the warrant should be disclosed, that was indeed in Camaro. That was part of it. And Roverio, I believe, and that's – I'm sorry, Your Honor. I'm having trouble. I believe that the Supreme Court has said it is all right to conduct those in Camaro. Your Honor, if this were merely – if I – if Mr. Moller had merely made a motion to disclose the identity of the informant or if he had made a motion for discovery and that was it, I would not be standing before you today because I would not have a complaint. But if disclosing the warrant affidavits as such would indeed disclose the identity of the warrant, that can also be in Camaro, true? I'm sorry. If it would also disclose the identity of the informant. The informant. The State may have an a – there may be an informant's privilege to keep the identity of the informant confidential. However, however, the actual proceeding on the – on the motion to suppress, which includes – this was – understand, this was – there was a motion, what's called in California a motion to traverse the warrant, which is like a Franks v. Delaware proceeding, questioning of witnesses. The defense was not permitted to question these live witnesses that came into chambers and were questioned by the judge. That's a suppression hearing. The cases in the United States Supreme Court are quite clear that when a defense counsel is excluded from an opportunity to question witnesses, it's striking at the core of the right to counsel. Not excluded, though. He was allowed to present questions. Yes, Your Honor. So that's not a total exclusion. The – what the standard is under – when I mention chronic, where the State enacts some procedures that prevent counsel from assisting the accused, what that is interpreted as meaning, and I describe in a brief, is whether counsel is prevented from assisting the accused in the way that is traditionally done in the adversary process. So, for example, when the defendant is – when defense counsel is, by some rule of court, is not permitted to do closing argument, Herring v. New York, that's a deprivation of counsel. That's different than where counsel is allowed to submit questions to the court. I mean, chronic appears to address a complete prevention of participation by counsel. And if there is some participation allowed by counsel, it would seem to me that that's a total habeas relief. Chronic has two prongs, as I mentioned. One is total absence. Of course, counsel was absent from that hearing. Well, he was present in writing. He was not totally absent. Which brings us to chronic's second prong, which is, does – has the State done something that prevents counsel from assisting the accused? You don't have to be totally absent under the second prong. The State just has to use procedures, employee procedures, that prevent counsel from assisting the defendant in the way that traditionally counsel does in the adversary proceeding. And there's a number of cases, can't do closing argument, Powell v. Alabama, can't do preparation of witnesses, can't question witnesses, that involve that second prong, that second kind of interference with counsel's – with counsel's representation. That, again, is a total prohibition. Pardon me? That, again, is a total prohibition. Well, it's a total prohibition, for example, in Herring, it's a total prohibition on giving closing argument, arguing the law in relation to the facts, which of course happened here. Counsel could not argue the law in relation to the facts because counsel did not know what the facts were. Counsel was excluded from that hearing. So there was a Herring violation. The – if you look at the case – Well, is there no – is there no public interest that you recognize in protecting confidential informants? We have – we have – I absolutely do recognize a public interest, and – How do you implement that, then? Your Honor, there are a couple of ways to implement that. One way has been suggested by the Ninth Circuit in a case called United States v. Anderson, where they say one thing the Court can do is have the defendant remain outside the in-camera hearing, but the lawyer gets to go into the in-camera hearing. But, of course, that's not Supreme Court precedent. So on habeas review, we are bound to what the Supreme Court has ruled in this area. Absolutely. It's not – it's – the Supreme Court has not designated what would be the appropriate procedure. But, Your Honor, I was just responding to the question of what could they do. And they could do that, and that would be consistent with Supreme Court precedent because the right to presence, in other words, leaving the defendant in the courtroom while they go in-camera, the right to presence would not be offended by that. In any event, Anderson said that you can exclude both the defendant and counsel from the in-camera hearing. But Anderson didn't – Did not Anderson say that? Anderson said that. But Anderson – but that is not based on a decision that the in-camera hearing was a critical stage of the proceeding. Counsel, you referenced footnote 25 of Cronick. Yes. I think you added a little something to it, because the footnote says that there's constitutional error when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding. You add it in the way that's traditionally done. That's not in the footnote. That's not in the footnote. The Cronick lay – sets out the two prongs, as Your Honor just read. Uh-huh. The – what I added about the traditional adversary proceeding comes from the cases that Cronick cited, Getters, Herring. I believe it's actually – it's in my brief. I believe it's Herring. But those are – those cases depict pretty much total deprivation of the opportunity to assist. Well, not in the sense of total absence. It's just that what they do – for example, they can be, in fact, quite short. For example, in Getters, the lawyer is prevented from consulting with his client overnight during a recess. In Herring, he can't give a closing argument. In Brooks v. Tennessee, it requires a counsel to put his defendant on before other – it's involvement in that process in a way that is – departs from the adversary fact-finding proceeding. Okay. You've exceeded your time. We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning. Deputy Attorney General David Loew for Respondent and Appellee. I'm not going to sit here and regurgitate our brief. Could you keep your voice up? Sure. Hold this a little closer. I would like to address Petitioner's point in trying to get out from underneath by saying that the Hobbs decision applied the wrong standard. I'd just like to point out, Hobbs wasn't directly confronted with a Sixth Amendment claim. The court of appeal in our case said Hobbs implicitly denied that claim when it set up this procedure. The Sixth Amendment claim was taken directly, in our case, to the California Supreme Court. We denied it on its merits. So what decision from the state court are we reviewing? We're reviewing this state court decision. Which one, the court of appeal or the Supreme Court? Well, it was directly presented to the California Supreme Court, who rejected it on its merits. I understand this Court will look back to the court of appeals decision. We look at the last reason decision. What was the last reason decision? Court of appeals decision, ma'am. Okay. And so what case did the court of appeals, what Supreme Court case did the court of appeal rely on in addressing this point? It relied on the California Supreme Court's decision in Hobbs, which then relied upon Rivario and McCrae and the principles that were set forth there, and those are the only two cases that I'm aware of that discuss the informer's privilege and how it interacted with the defendant's constitutional right. So the bottom line is the California court of appeal did not rely on a United States Supreme Court case. It did from the extent that it relied on Hobbs, which set forth those decisions in a very thorough decision. But did it expressly cite them? I'd have to look. In Unhabeas, we have to look at the last reason decision and decide whether or not that's contrary to one unreasonable application of Supreme Court authority. So if there's no Supreme Court case decided, it's not unreasonable application because there's no Supreme Court decision cited. So that's why he said it's contrary to. I'd agree with the fact that there's no Supreme Court case on point on this. And with the absence of that case, it's difficult to say that California's application in this context would be an unreasonable application of something that doesn't exist. Does that make sense? No. Sorry. I know it came out a little funny. I'm like. Are you trying to say that California doesn't have to even refer to any Supreme Court case as long as what California does, it does not violate a Supreme Court case? And I think you're trying to say, and there is no Supreme Court case that it's violating. Is that what you're trying to say? Yes, sir. And Early v. Packer makes that clear, that we don't have to as long as the decision is not contrary to. So. Go ahead. Well, I just wanted to ask, I'm curious about the need to keep the lawyer out in this situation, given that the lawyer is an officer of the court and doesn't, I mean, serves his client first, but still, is it really necessary to keep the lawyer out of this kind of hearing? We believe that it is. It's a point that we have addressed in our brief. I think for the informer's privilege to work correctly, and for this strong and legitimate interest the State has in this privilege, that keeping counsel out under these circumstances, where you have a sworn affidavit and a search warrant issued, it's been reviewed by a magistrate multiple times, having counsel go into chambers, I think the informers would take very little comfort in knowing that counsel is going to be in there for the very guy they're writing out. I think it would do harm to the informer's privilege. So you think that the attorneys, as officers of the court, can't be trusted to keep the confidentiality? I think that attorneys can be trusted, ma'am, but I also think that there are some very real circumstances where maybe that trust is not going to be, from an informer's privilege, they're just going to, human nature, they're going to think, hey, yeah, I'm one of the attorneys who are officers of the court, but I'm working for that guy over there. I'm supposed to trust that, from a practical standpoint. So you think it would impede informers from cooperating if they knew that there's a possibility that the defendant's attorney would be present? Certainly. Other than that, I'm willing to submit, unless the Court has more questions. Well, let me just, the, your opposing counsel cited Cronic as the case that governs our analysis of this case. It's the closest Supreme Court case that talks about deprivation of counsel. Do you agree that that's a Supreme Court case we should look to in conducting our habeas analysis? No. I believe that we should be looking at Rabario-McCray, because they're the two cases  that we should be looking at, and the informer's privilege. Cronic... But it doesn't talk about the attorney, the... Right to counsel. ...right to counsel. Those cases don't talk about the right to counsel. I would point out that Cronic talks about a total deprivation of counsel, and clearly this defendant, or Mr. Mueller, he had counsel. Counsel was there to assist. Counsel was there to help Mr. Mueller understand. Counsel brought the motions. It's been repeatedly referred to as a suppression motion, and that's kind of a characterization we disagree with. This hearing in camera was much like a discovery procedure where the defendant with his motion to unseal the affidavit, the court was making a decision on what sort of information the defendant would be entitled to, to make his motion, to support his motion to traverse. And once the court... So... Yes. I was going to say once the court makes that decision and decides he doesn't get anything, the court is supposed to go ahead and look at the affidavit. And I think that the Ninth Circuit in Kaiser has similarly endorsed a similar type thing. So are you saying that this was not a critical stage of the proceedings, then? I am saying that's very much an open question, whether it was in this situation where you're looking at a discovery procedure. Let me back up. First, I don't think the United States Supreme Court has ever said that this type of ex parte proceeding where we're unsealing an affidavit and there's a motion to quash and suppress or a motion to quash and traverse the warrant is before a judge. I don't think they've ever said that's a critical stage. I would disagree that it's a critical stage where you have a warrant that's been issued, supported by affidavit, sworn affidavit, it's been reviewed by magistrates, and we're talking about discovery of how much information that defendant or Mr. Mueller is going to get before it goes on to the motions to quash and the motions to traverse. That sounds like all the more reason why maybe counsel should be present. I don't think the defendant has a right to decide what information he gets. Well, he doesn't have the right to decide, but he has the right to try to persuade the court. Well, there are other instances when we've cited Pennsylvania v. Ritchie as another case where the court gets to decide without counsel being present the confidential records, and they use an in-camera proceeding. The Supreme Court has endorsed an in-camera proceeding in that context as well. Anything else? I have nothing else unless the Court has more questions than I might be helpful with. It appears not. Okay. Thank you. One minute for rebuttal. I'm sorry. Did Your Honor say one minute? One minute. Okay. It will be fast. Every circuit, including this circuit that has considered the question, has decided that a suppression hearing is a critical stage. Well, the opposing counsel is saying it wasn't really a suppression hearing, it was a discovery. More in the nature of a discovery hearing. With all due respect, opposing counsel is wrong. The suppression motion is in the excerpt of record. It's a motion to suppress evidence. That's a motion to traverse the warrant. That's a suppression motion. And if you look at Hobbs, Hobbs specifically directs the Court to decide the suppression motion in chambers and then come out and advise the counsel and the parties of his decision. That's what happened in this case. It's a suppression hearing. The Court will look at Hobbs, at the Hobbs decision in vain to find the words critical stage. They do not utter the word critical stage in that decision. And, you know, I appreciate the fact that my opponent says, well, the Supreme Court has not specifically decided that a suppression hearing is a critical stage, but what the – but for AEDPA purposes, this Court doesn't have to find the exact same case with the exact same facts. As Justice Kennedy said in Panetti v. Quarterman, if there's a general principle, then that can be applied to specific and different facts. So the general principle in this case is were there substantial rights affected? And we know that's both ways. The more general the principle, the more leeway the State courts have in applying it as well. The more leeway. That's absolutely right. The more leeway they have. But, Your Honor, when they – when the general principle is – has been qualified by the Supreme Court, when they say, for example, in Waller v. Georgia that the suppression hearing, which is a public trial case, where the suppression hearing may be more important than the trial. The right – the public has a right to, under the Sixth Amendment, the same amendment we're talking about here, the – because the suppression hearing may be more important than the trial, it's impossible to say that the substantial rights of the defendant cannot be affected. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Wells, Fernandez, Rawlinson